```
                  UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF MISSISSIPPI
                        JACKSON DIVISION

GARY D. THRASH                                          PLAINTIFF


VS.                              CIVIL ACTION NO. 3:07CV606TSL-JCS


NEW ENGLAND MUTUAL LIFE INSURANCE
COMPANY A/K/A NEW ENGLAND FINANCIAL,
A METLIFE COMPANY A/K/A NEW ENGLAND
LIFE INSURANCE COMPANY                                 DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Gary D. Thrash to remand. Defendant New England Life Insurance Company a/k/a New England Financial, a MetLife Company a/k/a New England Life Insurance Company (New England), has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Plaintiff Gary D. Thrash filed this suit in the County Court of Hinds County, Mississippi seeking to recover benefits he claimed were due under a policy of disability insurance issued by New England. Plaintiff alleged that whereas defendant had paid him $101,895 in benefits, he was in fact entitled to receive $154,000 under the policy, and that he was consequently owed an additional $52,905.07 in benefits, which defendant had refused to pay. Plaintiff demanded judgment of defendant in the sum of

"$52,905, plus interest from and after the accrual of each installment and all costs of Court accrued or to accrue and attorney's fees and other damages allowable by law in an amount of not more than $75,000.00."

Defendant removed the case pursuant to 28 U.S.C. § 1446 on the basis of 28 U.S.C. § 1332, which establishes original federal jurisdiction "where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different states. . . ." Defendant contended the requisites for diversity jurisdiction were satisfied in that the parties are of diverse citizenship, a fact which is not disputed, and because the amount in controversy actually exceeds $75,000, notwithstanding plaintiff's "misstatement" to the contrary in his complaint.  By way of explanation, defendant advised that prior to the filing of the complaint, defendant had informed plaintiff of its position that not only did it not owe him additional benefits, as plaintiff claimed, but that in fact, defendant had overpaid plaintiff benefits by the sum of $27,957.35.  Following removal, therefore, in keeping with this position, defendant filed a counterclaim against plaintiff, demanding a return of the alleged $27,957.35 overpayment.  Soon thereafter, plaintiff filed his motion to remand.  Therein, plaintiff declares that the amount in controversy, as plainly disclosed on the face of his complaint, is less than the $75,000

2

required for diversity jurisdiction and that consequently, the case must be remanded.

A defendant who removes a case to federal court "bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000.00." Garcia v. Koch Oil Co. of Tex., Inc., 351 F.3d 636, 638 (5th Cir. 2003). The basic rules for determining the amount in controversy are well established. As a general rule, in cases where an exact amount has been pled, "'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" Garcia, 351 F.3d at 638 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)). See also Nat. Union Fire Ins. Co. of Pittsburgh v. Russell, 972 F.2d 628, 630 (5th Cir. 1992) (amount in controversy is determined from the complaint itself, unless it appears that the amount stated in the complaint is not claimed in good faith). However, "if a defendant can prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, removal is proper unless the plaintiff shows that at the time of removal he was legally certain not to be able to recover that amount." Allen v. R & H Oil & Gas Co., 63 F.3d 1326 (5th Cir. 1995). "'When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds' the jurisdictional amount." Garcia, 351 F.3d at 639

3

(quoting De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993)).

In the case at bar, defendant first argues that plaintiff's complaint actually seeks an amount in controversy exceeding $75,000, given that plaintiff's ad damnum clause demands "the sum of $52,905, . . . plus attorney's fees and other damages allowable by law in an amount of not more than $75,000.00." (Emphasis added). According to defendant, "this language indicates that the plaintiff seeks $52,905.07 in benefits plus $75,000 in other damages and attorney's fees, for a total of $127,905.07." (Emphasis by defendant). See McKelroy v. Wood, No. 2:07CV86-P-A, 2007 WL 1703835, at 1 (N.D. Miss. June 13, 2007) (holding that "since the Complaint seeks $75,000.00, including punitive damages, plus . . . Attorneys fees,' the amount in controversy exceeds $75,000").

Granted, plaintiff's phrasing of the damages demand in his complaint may be ambiguous, in that it does not make clear whether he is demanding $52,905.07, plus attorney's fees and other damages, in an amount which cumulatively does not exceed $75,000, or whether the demand instead is instead for $52,905.07, plus an additional amount of attorney's fees and costs which does not exceed $75,000. Plaintiff has clarified this issue, however, in an affidavit submitted in connection with his motion to remand, in which he undertakes to explain that the intent of the ad damnum

4

clause was to seek damages in a sum less than $75,000.  He further stipulates that he has not sought and will not seek more than $75,000 in damages.

If it is facially apparent from the complaint that the amount in controversy exceeds $75,000 at the time of removal, "post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction." Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000).  However, where the basis for jurisdiction is ambiguous at the time of removal, "post-removal affidavits may be considered in determining the amount in controversy at the time of removal." Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000) (citations omitted).  See also Taylor v. WMC Mortg. Corp., No. Civ.A. 3:05CV85LN, 2005 WL 1362997, *1 (S.D. Miss. June 2, 2005) (recognizing that while post-removal affidavits are not admissible to change a party's jurisdictional allegations, they may be considered to clarify a pleading which is ambiguous) (citing Asociacion Nacional De Pescadores A Pequena Escala O Artesanales De Colombia v. Dow Quimica De Colombia S.A., 988 F.2d 559, 566 (5th Cir. 1993)).  Plaintiff's affidavit makes clear that the amount in controversy on the basis of his complaint is not more than $75,000.

Defendant argues, though, that even if it is not apparent from the face of the complaint that the amount in controversy

5

exceeds the required $75,000, the jurisdictional amount is nevertheless met because the actual amount in controversy between the parties includes not only the $53,905.07 demanded by plaintiff in his complaint, but also the $27,957.35 sought by defendant in its compulsory counterclaim, making the total amount in controversy $80,872.42.

In Liberty Mutual Insurance Company v. Horton, the Fifth Circuit wrote:

> [I]t is the long established rule that where, as here, the jurisdictional amount is in question, and a counterclaim is brought in an amount which, in itself or added to the amount claimed in the complaint, adds up to an amount in excess of the minimum jurisdictional amount, jurisdiction is established whatever may be the conclusion viewed from the plaintiff's complaint alone.

275 F.2d 148, 152 (5th Cir. 1960), aff'd, 367 U.S. 348, 81 S. Ct. 1570, 6 L. Ed. 2d 890 (1991). See also Premier Indus. Corp. v. Texas Indus. Fastener Co., 450 F.2d 444 (5th Cir. 1971) (citing Horton, and stating, "We have held that the jurisdictional amount may be established by considering the amount alleged by the counterclaim in aggregate with the main claim.").

The rule recited in Horton would appear to contemplate aggregation of the main claim and counterclaim to satisfy the amount in controversy in a case where neither the plaintiff's claim nor the compulsory counterclaim satisfies the jurisdictional

amount but the combination of the two does;[1] however, there is no

---

[1] The rule recited in Horton, and in particular the suggestion that aggregation of the claim and counterclaim should be allowed in this circumstance, has been the subject of criticism. One commentator has written:

> Although aggregation of the claim and the counterclaim would mean that the court has jurisdiction over two claims, neither of which could have been brought separately in a federal court, the outcome may be justified on the ground that Federal Rule 13(a) effectively expands the scope and definition of the civil litigation unit—the action or "matter in controversy"—to include the compulsory counterclaim. Therefore, the claim and the counterclaim may be taken as one controversy, and the "matter in controversy" referred to in the jurisdiction statutes would then be either the amount each involves or the aggregate of the two.
>
> Despite the appeal of this argument in favor of aggregation, there are strong reasons for not accepting it. Most importantly, to construe Federal Rule 13(a) to allow two claims into a federal court, neither of which could have been brought separately, might be thought to violate the prohibition in Rule 82 against construing the Federal Rules of Civil Procedure so as to extend federal court subject matter jurisdiction. In effect, the court would be curing the subject matter jurisdiction defect in the main claim by permitting the defendant's claim to supply the necessary jurisdictional amount and then, in somewhat bootstrapping fashion, asserting supplemental jurisdiction over a counterclaim that itself involves an insufficient jurisdictional amount. The result has a certain "heads I win and tails you lose" flavor to it.
>
> Nevertheless, it still may be argued that this result flows from a construction of the jurisdiction statutes in combination with the codification of the doctrine of supplemental jurisdiction, rather than from an overly permissive interpretation of Rule 13(a) that violates the mandate of Rule 82. This analysis has been used in the past in other contexts involving one or more of the Federal Rules to avoid a conflict with the proscription in Rule 82. <u>On balance, however, aggregating two insufficient claims in the claim-counterclaim situation seems to be too large a step for the federal courts to take under the existing</u>

7

Fifth Circuit case actually applying the Horton rule in that situation,[2] or for that matter, in any situation other than the specific factual setting presented in Horton.[3]  Yet even if that

---

>      jurisdiction statutes, especially in the diversity of
>      citizenship context.

14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3706 (3d ed. 1998) (emphasis added).  Courts have also questioned the correctness, as well as the viability of the Horton aggregation rule.  See, e.g., Gulf-South Piling & Constr., Inc. v. Traylor Bros., Inc., No. 97-0861, 1997 WL 332410, *2 (E.D. La. June 12, 1997) (noting that "subsequent treatment of the Fifth Circuit's decision in Horton indicates that 'the long established rule' is either mere dicta or limited to the specific facts of Horton"); see also Kaplan v. Computer Sciences Corp., 148 F. Supp. 2d 318, 320 (S.D.N.Y. 2001) (concluding that "Horton does not apply to cases, such as the one now before this Court, where neither the principal claim nor the compulsory counterclaim on its own claims an amount sufficient to satisfy the jurisdictional amount in controversy requirement.").

[2]    The Fifth Circuit's decision in Horton was rendered nearly fifty years ago, and in that time, only one other Fifth Circuit case has cited Horton for the proposition that the counterclaim and main claim may be aggregated to satisfy the amount in controversy, Premier Indus. Corp. v. Texas Indus. Fastener Co., 450 F.2d 444 (5th Cir. 1971); and even in Premier, the counterclaim was itself in an amount in excess of the jurisdictional minimum, and the reference to the aggregation rule recited in Horton appeared as dictum.  See id. at 447.

[3]    In Horton, a workman's compensation carrier filed suit in federal court, on the basis of diversity jurisdiction, to challenge a $1,050 award given by the Texas Industrial Accident Board pursuant to the Texas Workman's Compensation Act.  The court determined that the true amount in controversy, however, was not $1,050 that was challenged, but rather the $14,035 the claimant had sought before the board and which the insurer alleged the claimant was seeking to recover.
   In its opinion affirming the Fifth Circuit, the Supreme Court explained that under applicable Texas law, upon a suit being filed to challenge an award, the entire claim came open for adjudication, and thus,

>      the record before us shows beyond a doubt that the award
>      is challenged by both parties and is binding on neither;

8

is the rule applicable to original actions brought in federal court, "[t]the Fifth Circuit has not squarely addressed the question of whether counterclaims should be considered in calculating the amount in controversy in the removal context," Gulf-South Piling & Constr., Inc. v. Traylor Bros., Inc., No. 97-0861, 1997 WL 332410, *2 (E.D. La. June 12, 1997), and "the majority of district courts within this circuit have not followed the Fifth Circuit's 'long established rule' formulation [of Horton] when deciding whether counterclaims should be considered in the amount in controversy" in the removal setting, id.  See id. (position that jurisdictional defect in the main claim cannot be cured by permitting defendants' claim to supply the necessary jurisdictional amount is "all the more persuasive by the (removal) context. . ., which implicates cogent policy concerns that take this case out of the ambit of even the broadest allowable reading of Horton"); Meridian Aviation Service v. Sun Jet Intern., 886 F. Supp. 613, 615 (S.D. Tex. 1995) (concluding that "counterclaims

---

> that petitioner claims more than $10,000 from the respondent and the respondent denies it should have to pay petitioner anything at all.  No matter which party brings it into court, the controversy remains the same; it involves the same amount of money and is to be adjudicated and determined under the same rules. Unquestionably, therefore, the amount in controversy is in excess of $10,000.

367 U.S. at 353-54 (Black, J.).  Most courts have considered Horton "states a rule confined to Texas workers' compensation cases and motivated by the peculiarities of the Texas law about judicial review of such cases." Gulf-South Piling & Construction, Inc., 1997 WL 332410, at 2.

9

may not be utilized in calculating the amount in controversy," and viewing this approach as "consistent with the policies of construing removal statutes narrowly and allowing plaintiffs to be the master of their claims");[4] Conference Am., Inc. v. Q.E.D. Intern., Inc., 50 F. Supp. 2d 1239, 1242 (M.D. Ala. 1999) (noting that decisions of district courts in the Fifth Circuit have found the holding of Premier and Horton to be inapplicable in the removal context, and agreeing that "Defendant's Counterclaim should not be considered in determining the amount in controversy in the context of removal jurisdiction").[5] This is, in fact, the near unanimous rule. See McMahon v. Alternative Claims Serv.,

---

[4] In Meridian Aviation Service v. Sun Jet International, 886 F. Supp. 613, 615 (S.D. Tex. 1995), the court observed that "[w]hile the Fifth Circuit has not addressed this issue, . . . [t]he majority of courts that have considered this issue have determined that the amount in controversy (in a removed action) is found solely by reference to the plaintiff's original complaint." As examples of cases so holding, the court cited the following: Shaw v. Dow Brands, 994 F.2d 364, 366 (7th Cir. 1993) ("the amount in controversy [is determined] by merely looking at plaintiff's state court complaint ..."); Martin Pet Prod. v. Lawrence, 814 F. Supp. 56, 58 (D. Kan. 1993) (holding that Tenth Circuit precedent precludes consideration of counterclaims in deciding amount in controversy); Video Connection of Am. v. Priority Concepts, Inc., 625 F. Supp. 1549, 1551 (S.D.N.Y. 1986) (holding that only the contents of the state court petition may be considered for purposes of the amount in controversy).

[5] The court in Conference America, Inc. v. Q.E.D. International, Inc., 50 F. Supp. 2d 1239, 1242 (M.D. Ala. 1999), noted that because Horton and Premier were decided prior to October 1, 1981, those cases constituted binding authority for that court that it was not free to simply disregard. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Inc., 521 F. Supp. 2d 656, 658 (N.D. Ohio 2007) (adopting majority view that a "'court should not consider the value of a defendant's compulsory counterclaim in determining the amount in controversy for removal jurisdiction'") (quoting Firestone Financial Corp. v. Syal, 327 F. Supp. 2d 809, 810-811 (N.D. Ohio 2004)), and collecting cases); Kaplan v. Computer Sciences Corp., 148 F. Supp. 2d 318, 320 (S.D.N.Y. 2001) (stating that "[i]n the context of cases reaching this Court by removal, as here, the majority of courts decline to permit the defendant's counterclaim to be considered in determining the amount in controversy").

In Moseley & Standerfer, P.C. v. Han, No. Civ. A. 3:98-CV-2171-L, 1999 WL 305107, *1 (N.D. Tex. May, 11, 1999), confronted with the same issue that is presented here, the court found the fact that Horton was not a removal case to be "an important distinction," explaining,

> The Fifth Circuit has expressly held that in removal practice, the relevant jurisdictional facts must be judged as of the time the complaint is filed. Subsequent events do not influence the court's jurisdiction. Counterclaims are subsequent events that should not be considered in evaluating the amount in controversy under 28 U.S.C. § 1332. Only the plaintiff's complaint may be considered in testing the amount in controversy.

Id. Thus, because the plaintiff sought recovery of only $30,000 in its state court petition, the court concluded that "[u]nder the Fifth Circuit standards for removal cases, the minimum

11

jurisdictional amount is not met," and the court did not have subject matter jurisdiction.

Consistent with the cited authorities, this court agrees that the Horton rule does not apply to removed actions, and most assuredly not to one such as this, where the defendant did not file its counterclaim until after the case had already been removed. Thus, as aggregation is not permissible in this case to satisfy the amount in controversy, there is no basis for federal jurisdiction, and the case must be remanded.

Accordingly, it is ordered that plaintiff's motion to remand is granted.

SO ORDERED this 1st day of February, 2008.


            /s/ Tom S. Lee
            UNITED STATES DISTRICT JUDGE